# In the United States Court of Federal Claims

No. 19-673C
(Filed: December 30, 2020)

* * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| ZAFER CONSTRUCTION COMPANY,<br><br>*Plaintiff*,<br><br>v.<br><br>THE UNITED STATES,<br><br>*Defendant*. | Contracts; Contract Disputes Act, 41 U.S.C. §§ 7101-7109 (2018); delay; disruption; changes; limitations period for making claims. |

* * * * * * * * * * * * * * * * * * * *

*Sam Z. Gdanski*, Teaneck, NJ, for plaintiff.

*Robert R. Kiepura*, Trial Counsel, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, with whom were Ethan P. Davis, Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Steven J. Gillingham, Assistant Director, for defendant. *James D. Stephens*, United States Army Corps of Engineers, Engineer Trial Attorney, of counsel.

OPINION

BRUGGINK, *Judge*.

This is an action brought by plaintiff, Zafer Construction Company ("Zafer"), a government contractor, pursuant to the Contract Disputes Act ("CDA"). 41 U.S.C. §§ 7101-7109 (2012). Pending is defendant's motion to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. The motion is fully briefed. Oral argument is unnecessary. For the reasons explained below, we grant the government's motion to dismiss because plaintiff did not present its claim to the contracting officer for decision within the limitations period of the CDA.

BACKGROUND

On June 24, 2008, the United States, acting through the Army Corps of Engineers ("USCE") entered into a contract with Zafer Construction Company for the Bagram Public Works Utilities Contract on the Bagram Air Base in Bagram, Afghanistan ("project").[1] Under the project, Zafer was to design and build base-wide public work utilities including storm water collection systems, wastewater collection transmission systems, and water distribution and transmission systems for a contract price of $40,720,493.00.

Following completion of the project, Zafer submitted to the Contracting Officer ("CO") a Request for Equitable Adjustment ("REA") on September 10, 2013, and an amended REA on December 17, 2014, seeking additional payments in the total amount of $6,791,155.63. Four years later, on February 7, 2018, Zafer filed a certified claim with the CO. Complaint Ex. 4 at 1 (ECF No. 1-4 at 1). The CO's final decision ("COFD"), submitted on May 9, 2018, denied the relief requested because the officer found that the claim was time-barred under 41 U.S.C. § 7103(a)(4)(A), which requires that claims must be submitted to the CO within six years of accrual.

Zafer filed its complaint here on May 7, 2019, basing its claim on the CDA. The government has filed a motion to dismiss under Rule 12(b)(6), alleging that Zafer failed to meet the presentment requirement of the CDA because it neglected to submit a certified claim within six years of claim accrual.

Zafer has extensive experience with other contracts in Bagram, Afghanistan. In its complaint, Zafer describes the unique difficulties of working on projects there. The timing of construction and the shipment of materials had to be perfect to avoid going over budget. The materials were often shipped from the United States, and once the materials entered Afghanistan, had to make their way through border and base security, a process could take weeks or months. Zafer alleges that it suffered damages in the current contract for similar delays, along with constructive changes attributable to the United States.

Zafer divides its claimed delays into four different periods, corresponding to its Critical Path Method ("CPM") schedule updates or project milestone events. The four periods are as follows:

---

[1] The contract number is W917ER-08-C-0027.

1. Period 1: September 24, 2009 Baseline Schedule through April 13, 2010 CPM schedule update. Zafer alleges that delays in this period added 10 days to the schedule.
2. Period 2: April 13, 2010 CPM schedule update through September 24, 2010 CPM Project status update.  Zafer alleges that delays during this period added 178 days to the schedule;
3. Period 3: September 24, 2010 CPM Project status through June 29, 2011. Zafer alleges that delays in this period added 207 days to the schedule; and
4. Period 4: June 29, 2011 through July 3, 2012, actual Project completion.  Zafer alleges that delays in period 4 added 224 days to the schedule.

Complaint at 4.[2]

In total, the four periods embraced an additional 619 days of claimed delay to the project.  Zafer contends that the government agreed in writing to time extensions totaling 378 days covering the period from October 23, 2010 to November 22, 2011. These time extensions were incorporated in the contract through three separate Contract Modifications:  Modification B0006 (Bilateral) for 133 days, Modification B0014 (Bilateral) for 98 days, and Modification P0002 (Unilateral) for 147 days.

According to Zafer, the USCE issued the modifications to add time to the schedule while specifically reserving for a later date the parties' negotiating positions concerning pricing of overhead and other delay costs. Zafer attached Modifications B0006 and B0014 as exhibits to its complaint. Although Zafer alleges that Modification B0006 states that "related impacts costs . . . will be negotiated at a later date," Complaint at 6, the page with this statement is not included in the exhibit.  Modification B0014 does include language stating that related impacts costs will be negotiated at a later date. Zafer states that Modification P0002 also included language that the parties would negotiate overhead costs at a later date, although that modification is not included as an exhibit.

Zafer alleges that there were further delays, for which Zafer is not responsible, and which were not covered by the contract modifications listed above.  Many of these delays allegedly took place in period four and are blamed on the government's failure to accept the turnover of the project at

---

[2] Neither the complaint nor the attached materials explain what triggers the ends and the beginnings of these four periods.

completion or to outside causes including terrorism and protests, for which Zafer alleges the government is contractually responsible.

Zafer also alleges in its complaint that constructive changes arose as a result of the government's direction that Zafer perform additional change order work which required Zafer to adhere to government demands which were not within the scope of the contract. In Zafer's amended REA, these constructive changes have been listed under the following categories, among others: utility diggings, relocation of sewer main, repair of damages by others to completed works, additional works beyond contract scope, additional travel and extended service durations by supervisors, additional communication line, PVC Air distribution pipes, operation and maintenance of completed construction.

Zafer initially submitted an REA on September 10, 2013[3] and then an amended one on December 17, 2014. Zafer explains that the amended REA "combines the initial REA documents and all subsequent revisions, documents, backups, further clarifications/analysis prepared and submitted by Zafer." Complaint Ex. 1 at 9 (December 2014 REA).[4] The September and December REA both included the following language, "This REA is submitted so that the parties can engage in immediate discussions and negotiations to mutually amicably resolve this request" to resolve the extended overhead costs for the delays and constructive changes. Complaint Ex. 1 at 9.[5] Both REAs contain the following certification, "I, Önder Tümer, certify this REA of $6.791.155,63 submitted in a Request for an Equitable Adjustment under Contract No. W912ER-08-C-0027 is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the Contractor." Complaint Ex. 1 at 167.

---

[3] Serial Letter No: 0143.

[4] Zafer did not attach the September 2013 REA as an exhibit with its complaint. Zafer only attached a copy of the amended REA submitted in December 2014.

[5] Because Zafer stated that the initial REA document submitted as the 2013 REA was included in the amended 2014 REA, we can assume that the same language was included in both REAs.

4

It is undisputed that for the next four and a half years, from December 29, 2013, to May 9, 2018, the parties engaged in negotiations and communicated back and forth over requests by the government for additional information. The government also conducted an audit of Zafer. Complaint at 14-19.

Zafer eventually filed a certified claim, which the government received on February 7, 2018.[6] As characterized in the complaint, the certified claim "consists of a single-page narrative and CDA claims certification." Complaint Ex. 4 at 2. Attached to the certified claim, however, was the December 17, 2014 amended REA along with serial contract letters between the parties. On May 9, 2018, the COFD denied the relief requested in the certified claim because the officer concluded that the claim was time barred.

The CDA requires a contractor to file a claim against the Federal Government within 6 years after accrual of the claim. Any claim that accrues outside of this limitations period is barred. 41 U.S.C. § 7103(a)(4)(A). The COFD determined that Zafer had not filed a certified CDA claim until February 7, 2018 and that the previous submissions had merely been requests for equitable adjustments. The COFD stated that any claim that accrued prior to February 7, 2012, six years prior to submitting the claim, would be barred.

The COFD found that out of the 619 days of alleged delay described in Zafer's claim, the first 479 days accrued before February 7, 2012. Therefore, the COFD found, however, that because Zafer did not file a certified CDA claim relating to these alleged delays until February 7, 2018, the claim for these first 479 days was time-barred. The CO found that the remaining 140 days of the alleged delay period were barred due to untimeliness because Zafer failed to provide a proper time impact analysis and schedule updates, and thus, the CO was unable to evaluate whether the government caused any delay to critical path activities.

In addition, the COFD found that the claims regarding constructive changes were also barred.[7] Although the COFD found that the continuing

---

[6] Zafer submitted the certified claim on February 6, 2018. Gov't Reply Brief Ex. 1.

[7] The CO found that only one claim of constructive changes, involving four alleged repairs completed by Zafer, was not time-barred, as the alleged repairs were completed within six years of Zafer's submission of the

5

claim doctrine applied to Zafer's constructive changes claim, the COFD still found that the statute of limitations had run on each individual "liability-creating event" listed in Zafer's certified claim. Complaint Ex. 4 at 15. The COFD also found that the time-barred portion of Zafer's claim was not subject to equitable tolling because Zafer failed to demonstrate that it pursued its claim diligently or that it had alleged any extraordinary circumstance preventing it from filing its CDA claim on a timely basis.

## DISCUSSION

I. The Accrual Date of Zafer's Claim

Plaintiff's claim is separated into two categories of damages: delay and constructive changes. The limitations period for any type of CDA claim is set by the claim's accrual date: "Each claim by a contractor against the Federal government relating to a contract . . . shall be submitted within 6 years after the accrual of the claim." 41 U.S.C. § 7103(a)(4)(A). Thus, plaintiff's claim is timely either if it accrued within six years of February 2018, when it filed what the government concedes is a proper CDA claim, or if the 2013 and 2014 REAs constitute claims. To address the first possibility, we must first determine the accrual date of plaintiff's claim, the date "when all events that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known. For liability to be fixed, some injury must have occurred. However, monetary damages need not have been incurred." 48 C.F.R. § 33.201 (2019).

Plaintiff's argues that its 2018 claim was timely asserted because it did not accrue until Zafer received the COFD in May 2018, which refused compensation of plaintiff's claims. Zafer contends that prior to receiving the COFD, plaintiff and the government were involved in negotiations to resolve plaintiff's claims through the REA process, and thus, no claim accrued during negotiations because there was not yet any live dispute giving rise to a cause of action. Zafer asserts that it worked together with the government from December 29, 2013, to May 9, 2018, to negotiate compensation of plaintiff's claims and that it complied with the contract and the government's modifications during this time.[8]

---

February 7, 2018 certified claim. The CO, nevertheless, denied this claim on the merits.

[8] Zafer argues that it was lulled into negotiations through the REA process because it anticipated payment, as the government's modification letters agreed to negotiation of Zafer's time impact related costs at a later date.

Defendant responds that both types of claims accrued in 2009 or 2010, when the circumstances outlined in the two REAs began what plaintiff claims was government-caused delay. For reasons set out below, we agree with the government.

With respect to delay damages, although the complaint separates the delay into four continuous periods of time, for aught that appears, they are separated arbitrarily, as each period relies on the same initial triggering events, namely that the government had not "(1) demined Coyote Creek, (2) provided Zafer flight line access, or (3) removed obstacles from the storm water system route of construction; and as a result, storm water system work delayed completion of the Project by 10 calendar days from 23 October 2010 to 2 November 2010." Complaint Ex. 1 at 26. Even though the delay damages here cumulate through each period, they do not constitute subsequent new events.

Plaintiff suggests that the continuing claim doctrine applies to its delay claim. We disagree. The continuing claim doctrine "operates to save parties who have pled a series of distinct events - each of which gives rise to a separate cause of action - as a single continuing event." *Ariadne Fin. Servs. Pty. v. United States*, 133 F.3d 874, 879 (Fed. Cir. 1998). It "does not apply to a claim based on a single distinct event which has ill effects that continue to accumulate over time." *Id.* at 879. Instead, a cause of action accrues when at the first point that all the events that fix liability are apparent and entitle the plaintiff to institute an action. *See id.* The doctrine only applies if the claim is "inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages." *Brown Park Estates-Fairfield Development Co. v. U.S.*, 127 F.3d 1449, 1456 (Fed. Cir. 1997). The continuing claim doctrine does not apply here to plaintiff's delay damages because the REAs make plain that the events triggering delay were fixed by September 24, 2009, which is the date on which plaintiff's period one delay began. Moreover, even if we applied the doctrine, it would not save plaintiff's delay claim from being barred by the statute of limitations because the fourth period still began before February 7, 2012, which is too late, given our conclusion below that the REAs did not constitute claim submissions, as will be discussed further below.[9]

---

[9] We find it unnecessary to rely on the government's alternative waiver theory that plaintiff's failure to challenge the government's assertions of the accrual date resulted in a waiver of the argument.

7

With respect to plaintiff's assertion of ten categories of constructive changes, although the complaint does not provide dates regarding the asserted changes, the December 2014 REA shows that all were ordered prior to February 7, 2012.[10] Each event accrued as soon as Zafer knew or should have known of alleged damages and by its own admission, as reflected in the REAs,[11] the most recent accrual date for any of the constructive changes was August 1, 2011.

## II.   Statute of Limitations

Having determined that the accrual date for plaintiff's claim of delay damages was September 24, 2009, and that the accrual date for constructive changes was no later than August 1, 2011, the CDA statute of limitations for either claim ended no later than August 1, 2017.  *See* 41 U.S.C. § 7103(a)(4)(A).   The next issue involves resolving when plaintiff submitted a CDA claim.

It is clear that Zafer's February 7, 2018 submission meets the requirements of a CDA claim.  It included the proper certification under 48 C.F.R. § 52.233-1(d)(2)(iii) (2019).  It stated a sum certain ($6,791,155.63), and it provided the basis for the claim by attaching the December REA and all other relevant serial letters discussing the matters for contract adjustment.  Finally, and crucially, the 2018 submission demanded a final decision: "I hereby request a contracting officer's final decision on this Contract Disputes Act Claim."  Def's Reply Ex. 1 at 2.  Thus, the 2018 claim satisfies the requirements for submission of a CDA claim.  Based on the accrual dates we arrived at above, however, it came too late.

The only remaining question is whether Zafer's December 17, 2014 REA should be treated as a CDA claim.  To qualify as a claim under the

---

[10] In the COFD, the CO found that all of the constructive changes occurred prior to February 7, 2012, except for four repairs which were completed later. It appears that the CO considered the completion date of these latter four repairs as the accrual date of the claims covering them instead of the date when Zafer knew or should have known of its cause of action for them, i.e., the date they were ordered.

[11] Each constructive change listed in the 2014 REA details an event in which plaintiff notifies the government by letter or meeting of an issue which presented a constructive change to the contract.  For example, the most recent event that occurred shows that plaintiff sent a letter to the government addressing a constructive change to the contract on August 1, 2011.

CDA, there must be "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." *M. Maropakis Carpentry, Inc. v. U.S.*, 609 F.3d 1323, 1327 (Fed. Cir. 2010) (internal quotation omitted). The written demand must be nonroutine and contain a "clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Contract Cleaning Maint., Inc. v. U.S.*, 811 F.2d 586, 592 (Fed. Cir. 1987). Although a contractor is not required to explicitly request a final decision, to qualify as a claim under the CDA, the contractor must show that "what the contractor desires by its submissions is a final decision." *Maropakis*, 609 F.3d at 1327-28 (quoting *James M. Ellett Constr. Co. v. U.S.*, 93 F.3d 1537, 1543 (1996)).

Zafer argues that the December 2014 REA is a CDA claim because it "was for specific amounts of compensation with a sworn statement attesting to the truth of its submission and included detailed factual bases for its alleged losses which were for a sum certain." Pl's Response at 6 (ECF 16 at 6). Zafer's support for this allegation is the following language from the REA, "I, Önder Tümer, certify this REA of $6.791.155,63 . . . is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the Contractor." Complaint Ex. 1 at 167. We agree in part: Zafer's 2014 REA includes an amount certain, a sworn statement, and a factual basis for its loss. What was missing, however, was any indication that Zafer was expecting a final decision. Indeed, the wording and the parties' subsequent conduct is inconsistent with treating the REA as a final demand for a decision and payment.

The December 17, 2014 REA (which incorporates the 2013 request), lacks a request for a final decision. Instead, it asks for negotiations and is void of any indication that Zafer was asserting a claim: "[t]his REA is submitted so that the parties can engage in immediate discussions and negotiations to mutually amicably resolve this request." Complaint Ex. 1 at 9. This language plainly is not a current demand for payment but is a proposal for negotiations. This is further emphasized when Zafer "requests the opportunity to meet with and negotiate this matter so it may be resolved amicably by the parties without the necessity of pursuing additional avenues of relief available." Complaint Ex. 1 at 16 (stated in both the 2013 and 2014 REA). Zafer explains the purpose of the REA when it discusses the REA preparation costs: "Government contract principles have long recognized

9

that REA preparation costs incurred for the purpose of materially furthering the negotiation process is allowable." Complaint Ex. 1 at 167. In closing, Zafer reiterates that the REA's purpose is to negotiate the matter further, "As stated in the outset we trust that immediate negotiations will ensue. ZAFER is prepared to engage in meaningful dialogue on site to further this process. ZAFER knows that the USACE is committed to use good faith in resolving a REA." Complaint Ex. 1 at 167 (ECF No. 1-1 at 167). Finally, the actions of the parties for more than three years following the submission of the amended REA show that the REA's intent was to trigger negotiations.

Zafer responds to this by relying on the Federal Circuit decision in *Hejran Hejrat Co. v. United States Army Corps of Eng'rs*, 930 F.3d 1354, 1358-59 (Fed. Cir. 2019), for the proposition that any deficiency in the styling of the REA does not disqualify it as a CDA claim. In *Hejran*, the contractor had submitted an REA, which the contracting officer treated as a final decision and denied. Hejran appealed to the Board of Contract Appeals, which found that it lacked jurisdiction because it could not conclude that the REA was not submitted as a request for a final decision. On appeal, the Federal Circuit reversed, finding no statute of limitations issue. Hejran was still well within the six-year limitations period and any defect could be cured on remand. Moreover, the court found that the REA did seek a final decision. The contractor had submitted a previous REA and had subsequently let the contracting officer know that it would resubmit the REA with the proper certification to convert it to a CDA claim. Once the contractor provided the missing certification, the contracting officer treated the submission as a request for a final decision.

The controlling rule of *Hejran*, however, is that although "a CDA claim need not be submitted in any particular form or use any particular wording," the claim must still "indicate to the contracting officer that the contractor is requesting a final decision." *Id*. *Hejran* emphasized that a claim "must indicate to the contracting officer that the contractor is requesting a final decision" to qualify as a CDA claim. *Id.* Here, Zafer went to some lengths to emphasize that it wanted negotiations, not a final decision. Nor can Zafer cure any defect on remand.

In sum, while the February 7, 2018 submission met the requirements for a CDA claim, the earlier REAs did not. Zafer's claims accrued no later than August 1, 2011, and thus a CDA claim must have been filed within six years, on August 1, 2017, for the claim to be timely. The 2018 submission to the CO came too late.

CONCLUSION

      For the reasons stated above, we find that Zafer's claim did not comply with the requirements of the CDA, and thus the complaint fails to state a claim upon which this court may grant relief. Therefore, we grant the government's motion to dismiss. The Clerk is directed to enter judgment accordingly. No costs.

                                                  s/Eric G. Bruggink
                                                  ERIC G. BRUGGINK
                                                  Senior Judge